IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 18, 2018

## STATE OF TENNESSEE v. TROY ANTHONY LOZANO

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2016-CR-1510     Ross Hicks, Judge**

_____

### No. M2017-01250-CCA-R3-CD

_____

The defendant, Troy Anthony Lozano, appeals his Montgomery County Circuit Court jury convictions of simple possession of marijuana, possession of drug paraphernalia, operating a motor vehicle without two operable tail lights, and violation of the registration law. In this appeal, the defendant challenges the sufficiency of the convicting evidence and the denial of his motion to suppress. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Joshua W. Etson, Clarksville, Tennessee, for the appellant, Troy Anthony Lozano.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; John W. Carney, District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In December 2016, the Montgomery County Grand Jury charged the defendant with one count of simple possession of marijuana, one count of possession of drug paraphernalia, one count of driving a motor vehicle without two operable tail lights, and violation of the registration law.

At the May 16, 2017 jury trial, Clarksville Police Department Officer Holden Hudgin testified that on February 28, 2016, he observed an Infinity automobile traveling with "the rear of the vehicle . . . not illuminated by any light required by state law." Officer Hudgin activated his emergency equipment to initiate a traffic stop. The driver of the vehicle, later identified as the defendant, pulled the car over but refused to

provide his driver's license to the officer or otherwise identify himself. Additionally, the defendant only "had the window cracked about two inches on the passenger side," making it difficult for Officer Hudgin to hear him speak. Given the defendant's refusal to identify himself or roll the window down to communicate, Officer Hudgin became concerned for his own safety and asked the defendant to step out of the vehicle.

When the defendant refused, Officer Hudgin opened the door to the vehicle. Instead of getting out of the vehicle at that point, the defendant remained in the vehicle and "attempted to start filming" Officer Hudgin using the camera on his cellular telephone. The defendant continued to refuse to provide any identifying documents, telling the officer that "he didn't have to give it" because "he was traveling and not driving his vehicle." Officer Hudgin again asked the driver "to step out of the vehicle so we can figure out who he is and make sure he didn't have anything he wasn't supposed to have on his person weapons-wise, since he was acting nervous and irrational." At some point, the battery in the defendant's cellular telephone died, and the defendant exited the vehicle.

Officer Hudgin requested the presence of a K-9 at the scene "to conduct a public odor examination of the vehicle." After the "dog indicated to the odor of narcotics emitting from the vehicle," Officer Hudgin searched the interior of the vehicle and discovered "some particles of green plant like material" that he believed to be marijuana. Officer Hudgin testified that a field test of the substance, which weighed "less than a gram," administered at the scene "came back with a positive indication of THC, which is the primary active ingredient in marijuana." Although no further testing of the substance was performed in this case, Officer Hudgin said that of the "close to a hundred" field tests he had performed in the course of his duties, none had yielded results different from those obtained during later laboratory examinations.

Officer Hudgin also discovered "a black glass pipe . . . stuffed" into "one of those car windshield like sun visors" that "folds into a circle." The vehicle's registration, which was also found during the search, indicated that the vehicle was registered to Troy Lozano and that the registration had expired on January 31, 2016.

During cross-examination, Officer Hudgin testified that the defendant refused to sign the "state citation" and instead "ask[ed] to see a magistrate." In order to effectuate the request, Officer Hudgin placed the defendant under arrest. He said that, had the defendant simply provided his license and registration at the beginning of the traffic stop, the entire process would have lasted only "as long as it took . . . to gather his information, do . . . checks through NCIC and . . . issue him a citation."

During redirect examination, Officer Hudgin said that it was "not normal" for the suspect in a traffic stop to "start a video on a cell phone." He said that he believed that the defendant "was attempting" to "try to argue and have court on the side of the road" when "his phone died." Officer Hudgin testified that "this was the first time this has ever happened" to him despite that he conducts "several traffic stops a night." He agreed, however, that the defendant's attempting to film him was not illegal.

Clarksville Police Department Officer and K-9 handler Keith Jones testified that he brought police service dog Codea to the scene of the traffic stop in response to Officer Hudgin's call. He said that Codea "is trained to detect the presence of the odor of a narcotic in the form of marijuana, crack, cocaine, meth, ecstasy[,] and heroin." Officer Jones testified that Codea's reaction, which was captured on the dash camera recording, indicated "that there either [are] narcotics or there have recently been narcotics inside of the [defendant's] vehicle."

At the conclusion of the State's proof, the trial court permitted the defendant to make an oral motion to suppress the evidence.[1] The defendant asked the trial court to suppress all of the evidence gathered during the traffic stop on grounds that he "was not operating a motor vehicle at the time." The defendant elaborated,

> I was not using it as a vehicle to transport or carry persons or property for compensation. That was actually in my right of locomotion of liberty. I was in my liberty of right of locomotion at the time and I was not using it as a motor vehicle. . . . I was not engaged in transportation.

The defendant also argued that he "was not in commerce at the time" and that "the officer also stopped and seized" him without a warrant. The State argued that the issue was "without merit or any legal basis" and that Officer Hudgin had reasonable suspicion to stop the vehicle initially and developed probable cause to search the vehicle during the course of the stop. The trial court denied the motion, observing that even if it accepted the defendant's argument as the law, it would not avail him the relief he desired.

Defense counsel also moved to suppress the evidence seized from the search of the defendant's vehicle on grounds that the length of the detention exceeded the length of time necessary to complete the original objective of the stop. The State observed that "the defendant himself delayed the time . . . b[]y just not giving any of his information to law-enforcement in order to issue him a citation." The trial court denied

---

[1] The trial court permitted the defendant to argue his own motion despite that he was represented by counsel.

-3-

the motion, noting that it was the defendant's behavior, including his request to be taken before the magistrate, that lengthened the traffic stop.

Following a full *Momon* colloquy, the defendant elected to testify.

The defendant testified that he had a valid California driver's license but refused to provide it to Officer Hudgin "because [he] was not operating as a driver at the time." He explained, "I was not using my vehicle as a motor vehicle. I was in my liberty of locomotion. Which is protected under the fourth, fifth and 14th amendment[s] to the constitution." The defendant said that when he told Officer Hudgin that he "was not in commerce," the officer "said he doesn't know what that is or he didn't care, or something like that, and then he came around my door and just opened it." The defendant testified that he began recording the officer because he was "not engaged in transportation" but was instead in his "right of locomotion." He said that he intended to record "the encounter, and use it later on. But it died, so." The defendant acknowledged that he had asked to be taken before a magistrate. The defendant insisted that no odor of a narcotic emanated from either his person or his vehicle.

Based upon the foregoing proof, the jury convicted the defendant as charged of simple possession of marijuana, possession of drug paraphernalia, operating a motor vehicle without functioning taillights, and violating the registration law.

Following a sentencing hearing, the trial court imposed sentences of 11 months and 29 days for each of the defendant's Class A misdemeanor convictions to be served concurrently as 60 days' incarceration followed by supervised probation.

The defendant filed a timely but unsuccessful motion for new trial, which motion challenged only the sufficiency of the convicting evidence. In this timely appeal, the defendant revisits this issue and raises a suppression issue.

## I. Motion to Suppress

The defendant asserts that the trial court erred by denying his motion to suppress the evidence seized during the traffic stop, arguing as he did in the trial court that he "was NOT ENGAGED IN THAT ACT OF TRANSPORTATION/ NOT ENGAGED IN COMMERCE that would give the police the authority to regulate [his] automobile under T.C.A. code 55-9-402." He contends that because his "automobile was not being used in a commercial capacity to transport goods[,] property[,] or persons for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit," Officer Hudgin "violated [his] right of locomotion by stopping [him] for a MOTOR VEHICLE requirement of a

-4-

Tennessee Light law." He also argues that the officer did not have reasonable suspicion to stop his vehicle or probable cause to extend the stop long enough to summon the drug-detection dog. The State contends that the defendant has waived our consideration of this issue by failing to file a written motion to suppress prior to trial and by failing to include the issue in his motion for new trial. We agree with the State.

Tennessee Rule of Criminal Procedure 12(b)(2) provides that a motion to suppress evidence "must be raised before trial." Tenn. R. Crim. P. 12(b)(2)(C). "Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with" the "rules requiring such matters to be raised pretrial." Tenn. R. Crim. P. 12(f)(1). The defendant's failure to file a motion to suppress prior to trial bars our consideration of the claim on appeal.

The defendant also failed to raise the denial of his motion to suppress in his motion for new trial. This failure acts as a bar to plenary appellate review of any claim with regard to the ruling of the trial court on the motion. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion).

Although this court may, "[w]hen necessary to do substantial justice, . . . consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal," Tenn. R. App. P. 36(b), it is our view that the defendant's claim does not satisfy the criteria for plain error review. This court will grant relief for plain error pursuant to Rule 36(b) only when:

> "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake."

*State v. Cooper*, 321 S.W.3d 501, 506 (Tenn. 2010) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)). Here, because the defendant's claim is utterly without merit, he cannot establish that a clear and unequivocal rule of law was breached. Indeed, this court has repeatedly rejected claims like that raised by the defendant. *See, e.g., State v. Booher*, 978 S.W.2d 953, 957 (Tenn. Crim. App. 1997); *State v. Arthur Jay Hirsch*,

No. M2016-00321-CCA-R3-CD (Tenn. Crim. App., Nashville, Sept. 28, 2017), *perm. app. denied* (Tenn. Jan. 18, 2018); *State v. Anthony Troy Williams*, No. M2012-00242-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 3, 2012); *State v. Paul Williams*, No. W2009-02179-CCA-R3-CD (Tenn. Crim. App., Jackson, June 23, 2010); *State v. David A. Ferrell*, No. M2007-01306-CCA-R3-CD (Tenn. Crim. App., Nashville, Aug. 7, 2009); *State v. Bobby Gene Goodson*, No. E2001-00925-CCA-R3-CD (Tenn. Crim. App, Knoxville, July 29, 2002).

## II. Sufficiency

The defendant also challenges the sufficiency of the evidence to support his conviction of simple possession of marijuana, arguing that the State failed to establish "an unbroken chain of custody, or any chain of custody at all" and failed to present the field test kit as evidence at trial.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Initially, we observe that the defendant's claim that the State failed to establish "an unbroken chain of custody" for the plant-like substance that was admitted into evidence and submitted to the jury for examination, even if true, would not impact the sufficiency of the convicting evidence. The defendant did not challenge the chain of custody of this evidence at trial or in his motion for new trial. As a result, he has waived any consideration of this issue on appeal. *See State v. Hill*, 638 S.W.2d 827, 830 (Tenn. Crim. App. 1982) (holding that defendant waived appellate review of chain of custody when he "did not object to the introduction of the marijuana on the basis of a defect in the

chain of custody").

In this case, the defendant was charged with simple possession of marijuana. *See* T.C.A. § 39-17-418(a) ("It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice."). The evidence adduced at trial, in the light most favorable to the State, established that Officer Hudgin discovered a green, plant-like material in the defendant's car. The officer conducted a field test of the material, as he had in "close to a hundred" other cases, and the field test indicated that the substance, which weighed less than a gram, contained THC, the active ingredient in marijuana. The substance was admitted into evidence and submitted to the jury for examination as well. This evidence was sufficient to support the defendant's conviction of simple possession of marijuana. *See Hill*, 638 S.W.2d at 830 (finding evidence of marijuana possession sufficient when the investigating officer "testified he conducted a field test, as he had been trained to do, by placing a chemical on the plant and the test was positive for marijuana").

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-7-